IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

ROGER FLUTE,                          )
                                      )
            Plaintiff,                )
                                      )
                                      ) Case No. CIV-20-372-RAW-KEW
                                      )
COMMISSIONER OF THE SOCIAL            )
SECURITY ADMINISTRATION,              )
                                      )
            Defendant.                )

**REPORT AND RECOMMENDATION**

Plaintiff Roger Flute (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. He appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that he was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 51 years old at the time of the ALJ's decision. He has at least a high school education and past relevant work as an open pit quarry supervisor and a quarry worker. He alleges an inability to work beginning on February 13, 2017, due to limitations resulting from degenerative disc disease, ventricular septal defect, arrhythmia, depression, mental conditions, breathing issues, and post heart attack.

## Procedural History

On January 17, 2018, Claimant protectively filed an application for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon

reconsideration. On July 24, 2019, ALJ Clifford Shilling conducted a hearing in Fort Smith, Arkansas, at which Claimant testified. On February 26, 2020, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on August 31, 2020, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform light work with additional limitations.

### Errors Alleged for Review

Claimant asserts the ALJ committed error by (1) excluding proven limitations from the RFC (with various subparts), and (2) making improper findings at step five of the sequential analysis.

### RFC Determination

In his decision, the ALJ found Claimant suffered from severe impairments of disease of aortic valve, depressive disorder, personality disorder, neurodevelopmental disorder, history of alcohol use, and history of cannabis use. (Tr. 19). He determined Claimant could perform light work with additional limitations. Claimant was limited to work where interpersonal contact is

4

incidental to the work performed, the complexity of tasks is learned and performed by rote with few variables and little judgment, and supervision is simple, direct, and concrete. (Tr. 22).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of deli cutter slicer, housekeeping cleaner, and courier, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 30). As a result, the ALJ concluded Claimant has not been under a disability from February 13, 2017, through the date of the decision. (Tr. 31).

Claimant contends the ALJ's RFC assessment is unsupported for several reasons. He first asserts that his physical impairments do not allow for him to perform light work. He specifically argues that his use of a cane, heart ailments, chest pain, shortness of breath, lack of stamina, knee, ankle, and foot pain, lumbar pain, and limited range of motion all preclude him from standing or walking for six hours in a workday.

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." *White v. Barnhart*, 287 F.3d 903, 906 n.2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts

5

. . . and nonmedical evidence." Soc. Sec. Rul. 96-8p, 1996 WL 374184, *7 (July 2, 1996). The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on evidence contained in the case record. *Id*. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

The ALJ specifically considered the medical evidence and the Claimant's reported problems associated with his physical impairments. The ALJ noted that in February of 2017, Claimant reported episodes of "light chest pain" when emotionally stressed, excited, and when walking up an incline or lifting heavy objects. He also became out of breath upon exertion when walking at a fast pace or up an incline. Claimant smoked. His EET was negative for ischemia, but Claimant had some non-limiting chest pain. (Tr. 23, 999-1004). At another examination in May of 2017, Claimant continued to complain of chest pain and shortness of breath. His exam showed he was in no acute distress, but he had a holosystolic murmur but no increased work of breathing. He was assessed with

atherosclerotic heart disease of the native coronary artery without angina pectoris, nonrheumatic aortic valve insufficiency/aortic stenosis, dilated cardiomyopathy, and hypercholesterolemia. (Tr. 24, 1055-57). At a routine appointment in April of 2018, Claimant denied any chest pain, shortness of breath, and palpitations. His review of systems was negative in all indicated areas. (Tr. 24-25, 1353-55). He again denied having any such symptoms in August of 2018, and his physical examination showed normal heart rate and regular rhythm and his lungs were clear to auscultation. (Tr. 25, 1350-52). By April of 2019, however, Claimant reported wheezing at night, but he denied shortness of breath, dyspnea on exertion, chest pain, and palpitations. His exam showed his lungs were clear to auscultation and percussion and non-labored respiration, and his heart had a normal rate and rhythm and no murmur, gallop. (Tr. 26, 1534-36).

The ALJ also discussed the evidence regarding Claimant's lumbar back pain, knee pain, foot pain, ankle pain, and his use of a cane. He discussed evidence from November of 2017, at which Claimant requested mechanical knee braces. His primary care physician noted that Claimant ambulated well without them and declined them at that time. She noted Claimant still worked at a physical job. Claimant denied back pain, joint pain, and muscle pain, but reported a decreased range of motion. His musculoskeletal examination revealed a normal range of motion and strength in the

upper and lower extremities bilaterally and no tenderness, swelling, or edema. (Tr. 24, 1217-19).

In January of 2018, Claimant was seen for ankle pain accompanied by occasional swelling when on his feet for more than three hours. His examination revealed right ankle and heel tenderness, no swelling or edema, but some discoloration to the right ankle. His assessment was ankle pain. (Tr. 24, 1464-66). X rays of Claimant's right ankle were unremarkable except for small heel spurs. (Tr. 24, 1456). At an appointment a few days later at which Claimant's primary complaint was sinus drainage and cough, it was noted on examination that he was observed to move all his extremities and ambulate with a normal gait. (Tr. 24, 1449-51). Although Claimant complained of back pain in the thoracic region with radiation into his lower extremities in March of 2018, he noted it occurred in association with work and recent clearing of brush. His examination revealed normal range of motion, normal strength, and normal gait. He was assessed with back pain with radiation. (Tr. 24, 1297-1300). In April of 2018, his musculoskeletal examination was normal. (Tr. 25, 1353-55). In May of 2018, Claimant went to a podiatrist for his ongoing and worsening foot pain he had been experiencing since 2013. He complained of pain with activity at a five on a scale of ten in the right ankle and heel. His examination showed bilateral bunions, no pain upon range of motion in the toes, feet, or ankles, and

8

pain upon palpation of the feet/ankles at the right anterior ankle, right STJ, right planar heel, and right mid-arch. Claimant had unrestricted range of motion and equal and full muscle strength. He was assessed with plantar fasciitis and ankle arthralgia, and it was recommended he wear shoes with cushion and good support. (Tr. 25, 1377-80).

Claimant went to the hospital for neck pain the beginning of July of 2018. Examination findings included that Claimant was in no acute distress and walked with a cane. (Tr. 25, 1362-66). When Claimant was seen at his primary care clinic a little over two weeks later, however, there was no indication of him using a cane, and his musculoskeletal examination showed a normal range of motion and normal gait. (Tr. 1356-59). In August of 2018, Claimant complained of a weak ankle on the right side and pain in his neck, back, and joints. Bilateral foot X rays showed bilateral os peroneum, bilateral calcaneal spurs, mild osteoarthritis (bilateral first metatarsophalangeal joints), and no acute osseous abnormality. His examination revealed a normal range of motion. He was assessed with heel spurs and his physician recommended heel cups. (Tr. 25, 1348-49, 1350-52). Claimant went to his podiatrist in September of 2018, complaining of ongoing right ankle and foot pain. He reported no edema or numbness, tingling, or burning in his feet. His examination showed full range of motion bilaterally except at the great toe joints with pain, pain upon palpation of

9

the feet/ankles at the right anterior ankle, right plantar heel, and right mid-arch. He had equal and undiminished muscle strength in both feet. He was assessed with plantar fasciitis, and it was recommended he use a figure-eight wrap and insoles. He received an injection in his right plantar heel. (Tr. 25, 1374-76).

The ALJ discussed records from 2019, including April of 2019 when Claimant complained of pain in his low back, joints, and muscles. His exam included findings of lower back tenderness, dull pain of a six on a scale of ten, and no swelling. (Tr. 26, 1534-36). He also noted that Claimant's primary care physician completed a disabled parking form for Claimant in December of 2019, indicating Claimant was unable to walk without an assistive device. (Tr. 26, 1551).

After summarizing the evidence, the ALJ specifically discussed Claimant's physical impairments. He addressed Claimant's chest pain and shortness of breath reports in February of 2017, noting that the record did not show that they were worsening or accelerating, and at later appointments, Claimant often denied chest pain, palpitations, shortness of breath, or other significant cardiac symptoms. He noted that Claimant continued to smoke even though he was advised to quit, and that he was diagnosed with mild COPD and prescribed albuterol. Addressing Claimant's back, right ankle, and foot pain, the ALJ noted Claimant's imaging results were mostly unremarkable, mild, or suggested remote (past)

10

events. His physical examinations mostly showed normal range of motion and no tenderness in his musculoskeletal system, no edema, normal strength in his upper and lower extremities, and normal gait. The ALJ noted the conservative treatment of prescription medications for Claimant's back pain, back and knee braces, and recommendations for proper footwear and foot wraps. Claimant suffered few side effects from medication and surgery was not recommended or required. There were few references to Claimant using a cane, and his treatment providers had recommended regular exercise. The ALJ concluded that Claimant's treatment and medical findings were not entirely consistent with the intensity, persistence, and limiting effects of Claimant's symptoms. He concluded it was reasonable to conclude that Claimant was limited to light work to prevent the exacerbation of his musculoskeletal pain and other cardiac symptoms. The ALJ further concluded that Claimant's daily activities provided further support that Claimant was able to perform light work, and the exacerbation of any pain was accounted for by his RFC. (Tr. 27-28). This Court finds the ALJ appropriately accounted for Claimant's physical impairments in the RFC determination.

Claimant also contends that the ALJ failed to fully account for his mental and cognitive impairments in the RFC. He asserts that the ALJ failed to include limitations in the RFC to account for his difficulties with persistence and pace. Claimant points to

evidence from a counselor in June of 2009 and a consultative psychological assessment from October of 2009. The ALJ, however, specifically noted the October 2009 assessment, noting the information contained therein "may have been valuable for the formation of the claimant's [RFC] at or around 2008-2009, [but] the assessments are too remote in time for the current period of consideration." He determined that it was less persuasive as to Claimant's present RFC. In any event, Claimant had performed substantial gainful activity since 2009, and he alleged an onset date of disability of February 13, 2017, for his current application. (Tr. 679). This Court finds no merit to this portion of Claimant's argument.

Claimant also points to the consultative psychological examination by Derrise Garner, Ph.D., in May of 2018, arguing that the ALJ failed to properly consider Dr. Garner's opinions, specifically her finding that Claimant "would appear incapable of persisting on even simple instructions during a normal workday." (Tr. 1308). This was one of several findings by Dr. Garner. She also noted that (1) the claimant would appear capable of understanding simple and repetitive instructions during a normal workday; (2) the claimant would appear incapable of remembering even simple instructions during a regular workday; (3) the claimant would appear to be incapable of even a limited contact level with the general public during a normal workday; (4) the claimant would

appear to be incapable of even a limited contact level with co-workers and supervisors during a normal workday; (5) the claimant appears incapable of managing funds independently due to memory/processing impairment; (6) if recommendations for treatment are followed, little further improvement is expected from emotional symptoms; and (7) the claimant appeared to be a less than fully reliable informant, and Dr. Garner suspected minimization by Claimant regarding substance use reporting and anger/aggression issues. (Tr. 1305-09).

The medical opinion evidence in the case is subject to evaluation pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. Under the revised regulations, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, he must "articulate" in his decision "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record" by considering a list of factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors include: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to,

13

"evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The most important factors are supportability and consistency, and the ALJ must explain how both were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [he] will articulate how [he] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5)[.]" 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

An ALJ continues to have the duty to evaluate every medical opinion in the record regardless of its source. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). He may not "pick and choose among medical reports, using portions of evidence favorable to [his] position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004), citing *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984). An ALJ's rationale must be "sufficiently specific" to permit meaningful appellate review. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

The ALJ specifically considered Dr. Garner's evaluation. He discussed her evaluation of Claimant in detail and noted her findings as far as what Claimant was capable of doing during a workday. He found her conclusions persuasive as to Claimant being limited to unskilled work with reduced interpersonal contact based upon their general consistency with her exam and the other evidence of record. He noted, however, that Dr. Garner had also stated that Claimant appeared to be less than a fully reliable informant and that she suspected he minimized reported substance use and anger/aggression issues. (Tr. 28-29). The ALJ also noted in another portion of the decision that Dr. Garner had assessed Claimant with problems with persistence, but she had failed to specify how she reached her conclusion. (Tr. 21). The Court finds no error in the ALJ's treatment of Dr. Garner's opinion or with the mental limitations included by the ALJ in the RFC.

### Step-Five Determination

Claimant asserts the ALJ's hypothetical to the VE was incomplete because it failed to include all of Claimant's limitations. This Court has determined that the ALJ's consideration of Claimant's impairments was appropriate, and the limitations included in the RFC were supported by substantial evidence. The ALJ's questioning of the VE accurately reflected the RFC. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (finding an ALJ's hypothetical questioning of the VE provided an

appropriate basis for a denial of benefits because the question "included all the limitations the ALJ ultimately included in his RFC assessment.") (citation omitted).

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 14th day of March, 2022.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE